UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROY BRADLEY,

    Plaintiff,

vs.

AETNA LIFE INSURANCE, *et al.,*

    Defendants,

Case No. 1:05-cv-792

Dlott, J.
Black, M.J.

**REPORT AND RECOMMENDATION[1] THAT JUDGMENT BE ENTERED IN FAVOR OF DEFENDANTS, AND THIS CASE TERMINATED UPON THE DOCKET**

This is an ERISA[2] benefits recovery action through which plaintiff seeks reinstatement of an award of disability benefits from his former employer, Sysco Food Services ("Sysco"). Jurisdiction is premised upon 29 U.S.C. §1132(a)(1)(B). Relief is sought from Aetna Life Insurance Company("Aetna"), the Plan Administrator of Sysco's long-term disability policy (the "Policy").

Plaintiff was found disabled and awarded Plan benefits as of October 28, 2002. (*See* Administrative Record ("AR") at 264-68.) However, plaintiff's benefits were terminated effective June 30, 2004, after a determination by Aetna that plaintiff no longer satisfied the definition of disability and was not currently "under the care of a physician." (AR 181-183.) Plaintiff seeks a reinstatement of these benefit monies.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] *See* Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.*

Now before the Court is the Administrative Record, including a copy of the Policy; defendant Aetna's motion for judgment on the administrative record (doc. 19); plaintiff's motion for judgment on the administrative record (doc. 21); and the parties' responsive memoranda (docs. 25, 25, 26).

## I.  BACKGROUND AND FACTS

Plaintiff worked at Sysco from 1969, when he began as a delivery driver, until about April 2002, at which time he was a transportation supervisor.  (Doc. 1 at ¶ 9.)  As an eligible employee of Sysco, plaintiff was a participant, as that term is defined by ERISA, in a plan of long-term disability coverage (the "Policy").

A. *THE POLICY*

The policy provides:

This Plan will pay a Monthly Benefit for a period of total Disability caused by a disease or accidental bodily injury.  There is a waiting period.  (This is the length of time during a period of total disability that must pass before benefits start.)

From the date that you first became disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:

- you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
- your work earnings are 80% or less of your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of:

- disease; or
- injury.

*Material Duties* are defined as duties that:

- are normally required for the performance of your own occupation; and
- cannot be reasonably: omitted or modified. However to be at work in excess of 40 hours per week is not a Material Duty.

*Own Occupation* is defined as the occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed:

- for your specific employer; or
- at your location or work site; and without regard to your specific reporting relationship.

*Reasonable Occupation* is defined as any gainful activity for which you are; or may reasonably become; fitted by; education; training; or experience; and which results in; or can be expected to result in; an income of more than 80% of your adjusted predisability earnings.

(AR 456.)

The Policy further states that:

*A Period of Disability* starts on the first day you are disabled as a direct result of a significant change in your physical or mental condition occurring while you are insured under this Plan. You must be under the care of a physician. (You will not be deemed to be under the care of a physician more than 31 days before the date he or she has seen and treated you in person for the disease or injury that caused the disability.)

Your period of disability ends on the first to occur if:

- The date Aetna finds you are no longer disabled or the date you fail to furnish proof that you are disabled.

...

- The date you cease to be under the care of a physician

...

(AR 457.)

B.     *Plaintiff's Claim and Termination*

On October 4, 2002, plaintiff filed a claim for disability benefits due to severe low back pain resulting from a disc herniation at L4-L5, degenerative disc disease and spinal stenosis. (AR 275.) In a letter dated November 5, 2002, plaintiff was informed that he was eligible to begin receiving monthly disability benefits under the Policy and he began receiving those benefits in October 2002. (AR 0264-68).

In 2004, as provided by the Policy, Aetna reviewed plaintiff's claim to determine if he remained totally disabled. In support of his claim of continuing disability, plaintiff submitted a series of four Attending Physician Statements ("APS"), dated October 4, 2002 ("October 2002 APS") (AR0317-18); February 6, 2003 ("February 2003 APS") (AR0325-26); December 9, 2003 ("December 2003 APS") (AR0349-50); and June 10, 2004 ("June 2004 APS") (AR0347-48). Thus, as part of that review, Aetna reviewed the APS it received from Dr. John M. Roberts, plaintiff's treating physician.

The October 2002 APS indicated that the date of plaintiff's first visit was May 1, 2002 and his last visit was September 17, 2002. Dr. Roberts also indicated that Bradley underwent a bilateral laminectomy on May 30, 2002 and diagnosed lumbar spinal stenosis. Dr. Roberts further stated:

> I think the patient is a likely candidate for permanent long term disability and I do not expect him to return to any level of physical labor.

(AR 284.)

The February 2003 APS provided the date of his first visit as May 1, 2002 and the

last visit as December 17, 2002. In that APS, Dr. Roberts noted that plaintiff would be seen and treated on an as needed basis. Dr. Roberts noted plaintiff had "no residual leg pain" and under objective findings stated "no new tests or x-rays." (AR 325) However, Dr. Roberts also indicated that plaintiff's prognosis was poor and that plaintiff was not expected to be able to return to work.[3]

The December 2003 APS again provided the date of plaintiff's first visit as May 1, 2002 and the last visit as December 17, 2002. In that APS, Dr. Roberts noted that no next office visits were scheduled and noted that no current medication had been prescribed and that no recent tests or x-rays have been performed. Dr. Roberts, however, again confirmed no ability to return to work and further indicated that plaintiff was disabled permanently.

The June 2004 APS also provided the date of plaintiff's first visit as May 1, 2002 and the last visit as December 17, 2002. Dr. Roberts noted that no next visits had been scheduled and he also stated that no current medications had been prescribed and that no recent tests or x-rays have been performed. Dr. Roberts again opined that plaintiff had no ability to return to work and was permanently and totally disabled. (AR 397.) Dr. Roberts further noted that plaintiff "has very limited motion of his lumbar spine." (AR 396-397.)

---

[3] The February 2003 APS also included an office note, dated December 17, 2002, which stated: "Roy Bradley has done very nicely. He is 7 months out from his surgery. He has no residual leg pain. He has a minor degree of back pain, but he admits he has put weight on and he has not been exercising. Today's examination reveals no focal neurological deficits." (AR0180).

Based upon the review of the APS's, which, as previously noted, were the only documents submitted by plaintiff in support of his claim after payment of the benefits commenced, Aetna denied any further benefits. In a letter dated June 28, 2004 (the "June 28th Letter"), Aetna informed Bradley that his disability benefits were being terminated, effective June 30, 2004.

The June 28th Letter set forth the above recitation of the information contained in the APS's and then stated:

> As the medical information contained in your file provides that you were last seen and/or treated for lumbar spinal stenosis on December 17, 2002, you are not considered to be currently "under the care of a physician." Also, the objective medical evidence in your file does not support the assertion that you are precluded from performing the material duties of your own occupation. The mere existence of a diagnosis is not documentation which supports you are incapable of performing the material duties of your own occupation.

(AR 182.)

The June 28th Letter also contained information regarding how to appeal the decision and the types of additional information that Bradley could submit for review. (AR 183). The June 28th Letter stated in pertinent part:

> To obtain a review, you or your authorized representative should submit a written request. Your request should include . . . comments, documents, records and other information you would like to have considered . . . .

(AR 182.)

Plaintiff, through counsel, subsequently appealed the decision to deny further benefits. However, plaintiff did not submit any additional information regarding the

October 2002 through June 2004 timeframe that evidenced that he had been under the care of a physician during that time.

The only additional information plaintiff submitted was evidence of an office visit to Dr. Roberts on July 17, 2004, two weeks after the termination of the claim (AR 219); a notice of Social Security Disability Income decision (AR 220-28);[4] and some miscellaneous doctor's records from 2005, most of which regarding a complaint about his left shoulder and surgery that was performed on that shoulder. (AR0211-18). In fact, the only mention in those records of plaintiff's back condition is a notation in a record of a February 2005 office visit to a Dr. Michael G. Lawley, which states:

> Cervical Spine: Nontender. Full flexion extension and lateral bending with no radicular signs, negative Spurling's test.

(AR0212).

Based upon this lack of evidence in the record to support plaintiff's disability claim, Aetna upheld the decision to deny benefits.

On or about December 2, 2005, after exhausting all of his administrative appeals, plaintiff filed the instant action seeking to have his disability benefits reinstated.

## II. STANDARD OF REVIEW

The Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility

---

[4] On November 5, 2002 plaintiff filed an application for Social Security Disability Benefits. In April 2003, the Social Security Administration determined that plaintiff met the definition of disability and awarded plaintiff benefits as of September 28, 2002. (AR 220-228.)

for benefits or to construe the terms of the plan." *University Hosps. v. Emerson Elec. Co.*, 202 F.3d 839, 845 (6th Cir. 2000). If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989); *University Hosps.,* 202 F.3d at 845.

Here, the parties agree that the arbitrary and capricious standard applies in the present case because the long term disability insurance policy at issue gives Aetna discretionary authority. "When a plan administrator has discretionary authority to determine benefits, [the Court] will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'" *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996)).

Nonetheless, as noted by the Sixth Circuit, merely because the review is deferential does not mean that it is inconsequential. *Moon v. UNUM Provident Corp.,* 405 F.3d 373, 379 (6th Cir. 2005). The court explained as follows:

> While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber-stamping those decisions. As we observed recently, "[t]he arbitrary-and-capricious ... standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." *McDonald,* 347 F.3d at 172. Our task at all events is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id.*

-8-

*Id.*

Only if the administrative record supports a "reasoned explanation" for the termination of benefits, the decision is not arbitrary or capricious. *See Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000) (cited in *Moon,* 2005 WL 664330, at *5).

In sum, the decision of the administrator is upheld if it is the result of a deliberate principled reasoning process, if it is supported by substantial evidence, and if it is based upon a reasonable interpretation of the plan. *Glenn v. MetLife*, *et al.*, --- F.3d ----, 2006 WL 2519293 *5 (6th Cir. Sept. 1, 2006)(quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

### III. DISCUSSION

Here, in terminating plaintiff's benefits, Aetna determined that plaintiff was no longer under the care of a physician. Plaintiff argues that Aetna did not advise him of the policy requirement to actively remain under the care of a physician. Plaintiff further argues that the Policy provision is ambiguous, as it is not defined within the Policy. Plaintiff's assertions lack merit.

As noted above, pursuant to the plain language Policy, a policyholder's period of disability ends if any one of several requirements is no longer being met; one of which being "[t]he date you cease to be under the care of a physician." AR 457. Notably, plaintiff cites this provision of the Policy in his memorandum in support of his motion for

judgment, immediately after asserting Aetna did not advise him of such requirement. (Doc. 21, p. 6-7.)

Moreover, as noted by Aetna, despite plaintiff's claims that he was not aware that he needed to be under the regular care of a physician, and that the Policy "fails to provide notice to the insured of the requirement of periodic care imposed," the Administrative Record contains several examples of this requirement.

A letter dated November 5, 2002 (the "November 5th Letter"), from Aetna to plaintiff initially approving the benefits, states, at page two, "[y]our plan requires that we periodically re-evaluate your eligibility by requesting updated medical information from your physician . . . ." (AR 321).

A letter dated November 21, 2003 (the "November 21st Letter"), which regarded a reevaluation of the claim, states: "[e]nclosed you will find several forms required on all LTD claims during this evaluation period. These documents need to be returned to our office within 30 days. Once received, current medical records from your treating physicians will be requested and reviewed . . . ." (AR 333).

Accordingly, plaintiff was clearly aware that Aetna required current medical information to evaluate his claim of continuing disability.

Furthermore, the undersigned finds that the provision in question is unambiguous. *See also Doe v. Provident Life and Acc. Ins. Co.* 1997 WL 799439, *7 (E.D.Pa.,1997) (The language "under the care and attendance of a physician" is unambiguous and thus "[a]pplying the plain and ordinary meaning thereof, I find that a policyholder satisfies this

-10-

provision if he meets periodically with a physician and receives care."). Courts that have addressed what constitutes regular care by a physician have viewed this term as meaning that the insured was obliged to "periodically consult and be examined by his or her treating physician at intervals to be determined by the physician." *Heller v. Equitable Life Assurance Soc'y of the United States*, 833 F.2d 1253, 1257 (7th Cir. 1987); *Rahman v. Paul Revere Life Ins. Co., Inc.*, 684 F. Supp. 192, 198 (N.D. Ill. 1988); *Brassard v. Continental Cas. Co.*, 630 F. Supp. 951, 954 (D. Conn. 1986).

Here, the only evidence submitted by plaintiff in support his continued disability was a series of four APS's, dated October 4, 2002, February 6, 2003, December 9, 2003 and June 10, 2004. (AR 317-81, 325-26, 347-48, 349-50). As noted above, the APS's note that plaintiff's first visit was May 1, 2002 and his last visit was December 17, 2002. Moreover, the December 2003 and June 2004 APS's indicate that no next visits were scheduled, no current medications were prescribed, and no recent tests or x-rays were performed.

The language of the Policy clearly states that plaintiff must remain under the care of physician during his period of disability. At the time plaintiff's benefits were terminated, he had not seen his attending physician, Dr. Roberts, for over eighteen months, for any purpose other than to have him complete the four above-referenced APS's.

Accordingly, the undersigned agrees that Aetna's determination that plaintiff was no longer "under the care of a physician," because he had not been examined by a

physician more than one time in a period of 18 months, is a reasonable interpretation of the Policy. *See Brassord v. Continental Cas. Co.,* 630 F.Supp. 951, 954 (D.Conn. 1986) (holding that the plaintiff's failure to remain under the regular care of a physician is sufficient in itself to justify the defendant's denial of disability benefits.)

## VI.

In light of these findings, and the lack of evidence suggesting that plaintiff remained under the care of physician as required by the Policy, Aetna's decision - to terminate plaintiff's disability benefits as of June 30, 2004 - was neither arbitrary nor capricious. *See Yeager,* 88 F.3d at 381-82.

The undersigned therefore **RECOMMENDS** that Aetna's motion for judgement (doc. 19) be **GRANTED**; plaintiff's motion for judgment (doc. 21) be **DENIED**; judgment be **ENTERED IN FAVOR OF DEFENDANT AETNA,** and this case be **TERMINATED UPON THE DOCKET.**

**IT IS SO RECOMMENDED**.


Date:  August 24, 2007                               s/Timothy S. Black            
                                                    Timothy S. Black
                                                    United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROY BRADLEY,

    Plaintiff,                                   Case No. 1:05-cv-792

vs.                                              Dlott, J.
                                                     Black, M.J.

AETNA LIFE INSURANCE, *et al.*,

    Defendants,

**NOTICE**

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).